**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALBERT H. ROBERTS, | : | |
| | : | Civil Action No. 11-1793 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| KAREN BALICKI, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Northern State Prison
168 Frontage Road
Newark, NJ 07114

**BUMB**, District Judge

　　Plaintiff Albert H. Roberts, a prisoner presently confined at Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983,[1] alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to

---

　　[1] Plaintiff incorrectly asserts jurisdiction under 28 U.S.C. § 1347 (establishing jurisdiction in civil actions for partition where the United States is a joint tenant), 18 U.S.C. § 1959 (a criminal statute related to violent crimes in aid of racketeering activity), and 18 U.S.C. § 1962 (a criminal statute prohibiting certain activities in connection with racketeering activity).

28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that, while he was confined at South Woods State Prison, Correctional Officer P. Heaten verbally harassed him by making racial slurs and death threats.  Plaintiff reported the alleged verbal harassment to the Ombudsman and alleges that Correctional Officers R. Hogan and R. Yacovelli then began to threaten and harass him.  Plaintiff alleges that he wrote letters to South Woods State Prison Administrator Karen Balicki, New Jersey Department of Corrections Commissioner George Hayman, and Acting Director Gary M. Lanigan advising them of these threats.  Plaintiff alleges that these officials took no action to protect Plaintiff in response to his letters.  Plaintiff alleges that correctional officers of South Woods State Prison have a long history of assaulting prisoners and using excessive force and that Karen Balicki, George Hayman, and Gary M. Lanigan were aware

2

of this history but refused to take reasonable measures to stop this practice.

Plaintiff alleges that on April 23, 2009, he was subjected to a pat-down search by Correctional Officer Yacovelli. Plaintiff alleges that, as he approached Plaintiff to conduct the pat-down search, Officer Yacovelli said loudly "This is the nigger who likes to file complaints!" Plaintiff alleges that Correctional Officers Horan, Volov, McCoy, Gandy, and Lago were in the immediate area and began to laugh. Plaintiff alleges that one of the officers said "Let's show him that the boys in blue run this ... prison." Plaintiff alleges that, instead of performing a pat-down search, Officer Yacovelli pulled Plaintiff's pants down and then began to punch Plaintiff's face and slam it into a thick safety-glass window, while stating "I'll teach your dumb ass to complain about one of us!!" Plaintiff alleges that he did not resist Officer Yacovelli and complied with all of his demands. Plaintiff alleges that he suffered severe pain and a large gash on his forehead as a result of Officer Yacovelli's actions. Plaintiff alleges that Officer Hogan said, "Leg's kill this nigger!!!" Plaintiff alleges that Officer Yacovelli then continued to punch Plaintiff and that Officers Hogan, Horan, Lago, Volov, McCoy, and Gandy joined in the attack. Plaintiff alleges that he fell to the ground as the attack continued. Plaintiff alleges that he was then handcuffed

and shackled, and that he was attacked again by Officers
Yacovelli, Hogan, Lago, Volov, Horan, Gandy, McCoy, Sgt.
Richards, and Sgt. Jilla, who kicked, stomped, punched, and spit
on Plaintiff.  Plaintiff alleges that this attack lasted 15 to 20
minutes.  Plaintiff alleges that he was then dragged to another
location and beaten again by "the defendants," unspecified.
Plaintiff alleges that he was then dragged to a holding cell and
punched and beaten by Officers Hogan and Yacovelli.  Plaintiff
alleges that Sgt. Richards and Sgt. Jilla give unspecified
"defendants" a high-five and told them "Good work Guys.  That
will teach that nigger."

        Plaintiff alleges that Sgt. Richards and Sgt. Jilla refused
to get Plaintiff medical attention for his injuries, which he
alleges included: head trauma, contusions, cut on his forehead,
black eyes, back injury, chest pains, inability to walk, blurred
vision, and swelling of the face, hands, chin, and head.

        Plaintiff alleges that Sgt. Richards and Sgt. Jilla allowed
Officer Yacovelli to write a false disciplinary report on
Plaintiff.  Plaintiff alleges that he told Hearing Officer L.
Jantz about the assaults, that Officer Jantz refused to conduct
an inadequate investigation, but that he nevertheless offered to
downgrade the disciplinary charge in order to cover up the
actions of the officers who assaulted Plaintiff.  Plaintiff
alleges that he refused the offer and that he then appeared

before Hearing Officer Z. Maguire, who also failed to conduct an adequate investigation and found Plaintiff guilty on the disciplinary charge.  Plaintiff alleges that Hearing Officer Maguire's decision served to promote an unwritten policy and practice of allowing unjustified assaults on inmates by officers.

Plaintiff alleges that he continues to receive threats to his safety and harassment by Correctional Officers King, Sheldon, and L. Kenlowe.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." Morse v. Lower

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading

requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled

to relief."  A complaint must plead facts sufficient at least to

"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d

218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what

the ... claim is and the grounds upon which it rests.'" Erickson

v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken

6

as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

8

Therefore, after <u>Iqbal</u>, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)
(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a]
party asserting a claim ... may join as independent or
alternative claims, as many claims as it has against an opposing
party."

Rule 20(a)(2) controls the permissive joinder of defendants
in pro se prisoner actions as well as other civil actions.

9

> Persons ... may be joined in one action as defendants
> if:
>     (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>     (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

In actions involving multiple claims and multiple

defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v. Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   ANALYSIS

A.   Eighth Amendment Claim Arising from Verbal Threats

Plaintiff alleges that Correctional Officer P. Heaten verbally harassed him by making racial slurs and death threats. Plaintiff alleges that Correctional Officers R. Yacovelli and R. Hogan also threatened him after he reported Officer Heaten's threats to the Ombudsman.

12

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1981). What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson v. McMillian, 503 U.S. at 5.

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 528 (1984). The Eighth Amendment protects

prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988).  Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.  Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).  However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  Douglas, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

Here, the initial verbal remarks are not sufficient to rise to the level of an Eighth Amendment violation.  Nor does Plaintiff state a retaliation claim based upon the threats by Officers Yacovelli and Hogan, allegedly made after Plaintiff complained about Officer Heaten's threats.

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.  Officer Yacovelli's and Hogan's verbal threats were not sufficient, in and of themselves, to deter a person of ordinary firmness from exercising his constitutional rights.

Plaintiff also asserts, however, that he continued to receive threats, after his beating and disciplinary hearing, from Officers King, Sheldon, and Kenlowe.  Coupled with the allegedly severe beating Plaintiff had already suffered, along with the

15

alleged false disciplinary report, the claim of alleged continued threats to his safety is sufficient to avoid dismissal at this preliminary screening stage.  Accordingly, the Eighth Amendment harassment claim may proceed as against Defendants King, Sheldon and Kenlowe.

B.    Eighth Amendment Excessive Force Claim

Plaintiff alleges that Officers Yacovelli, R. Hogan, Horan, McCoy, Lago, Gandy, and Volov, and Sgts. Richards and Jilla, used excessive force against him.

Where the Eighth Amendment claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation omitted):  "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

16

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).   Thus, not all use of force is "excessive," the level of a constitutional violation.

In addition, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, ... a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."   Smith v. Mensinger, 293 F.3d 641, 640 (3d Cir. 2002).

The Eighth Amendment claim for excessive use of force is sufficient to proceed as against Officers Yacovelli, R. Hogan, Horan, McCoy, Lago, Gandy, and Volov, and Sgts. Richards and Jilla.

C.   Eighth Amendment Failure-to-Protect Claim

Plaintiff alleges that Karen Balicki and Commissioners George Hayman and G. Lanigan failed to take reasonable measures to protect him, despite his sending them letters advising of the initial threats by Officers Yacovelli and Hogan.

Under the Eighth Amendment, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to

18

inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Applying Farmer to the instant action, the first question is whether Plaintiff has alleged facts showing that he faced a substantial risk of assault. The second question is whether Plaintiff has alleged facts from which it could be inferred that these administrative defendants were aware of and disregarded that risk.

Plaintiff's letters reporting mere verbal threats and racial slurs, however reprehensible, are not sufficient to put these administrative defendants on notice that Plaintiff faced a substantial risk of assault. The letters do not suggest that defendants were informed of a specific risk of harm to Plaintiff

19

or other inmates, <u>Nami</u>, 82 F.3d at 67-68; <u>Young</u>, 960 F.2d at 362,
or that "a substantial risk of ... attacks was longstanding,
pervasive, well-documented" or otherwise obvious to them.
<u>Farmer</u>, 511 U.S. at 842; <u>accord Hamilton v. Leavy</u>, 117 F.3d 742,
747-48 (3d Cir. 1997); <u>Ingalls v. Florio</u>, 968 F.Supp. 193, 199-
200 (D.N.J. 1997).  While defendants may not have exercised due
care in failing to prevent the attack, such negligence is
insufficient to establish a violation of the Eighth Amendment.
<u>Davidson v. Cannon</u>, 474 U.S. 344, 345-48 (1986) (finding that
prison officials' negligent failure to heed prisoner's
notification of threats from another inmate, followed by an
assault, is not a deprivation of constitutional rights); <u>see also</u>
<u>Schwartz v. County of Montgomery</u>, 843 F.Supp. 962 (E.D. Pa.),
<u>aff'd</u>, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections
officers' failure to observe institutional policies regarding the
supervision of dangerous inmates constitutes negligence, which
cannot support a § 1983 action for violation of the Eighth or
Fourteenth Amendments).  Because negligence is not actionable
under § 1983 as a constitutional violation, Plaintiff's failure-
to-protect claim will be dismissed for failure to state a claim.

D.   <u>Eighth Amendment Medical-Care Claim</u>

     Plaintiff alleges that Sgts. Richards and Jilla refused to
get him medical care after the beating.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than

21

mere malpractice or negligence; it is a state of mind equivalent
to reckless disregard of a known risk of harm.  <u>Farmer v.
Brennan</u>, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's
subjective dissatisfaction with his medical care does not in
itself indicate deliberate indifference.  <u>Andrews v. Camden
County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>,
551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th
Cir. 1984).  Similarly, "mere disagreements over medical judgment
do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897
F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt
to second-guess the propriety or adequacy of a particular course
of treatment ... [which] remains a question of sound professional
judgment.  Implicit in this deference to prison medical
authorities is the assumption that such informed judgment has, in
fact, been made." <u>Inmates of Allegheny County Jail v. Pierce</u>,
612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation
omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06;
<u>White</u>, 897 F.2d at 110.

    "Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'

22

deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

Here, the allegations of the Complaint are sufficient to permit an Eighth Amendment claim for denial of medical care to proceed as against Sgts. Richards and Jilla.

E.    Failure to Supervise Claim

Plaintiff alleges that Karen Balicki, Commissioner George Hayman, and Hearing Officers Z. Maguire and L. Jantz failed to adequately train and/or supervise employees under their control.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton v. Harris, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training
> program in relation to the tasks the particular
> officers must perform.  That a particular officer
> may be unsatisfactorily trained will not alone
> suffice to fasten liability on the [supervisor],
> for the officer's shortcomings may have resulted
> from factors other than a faulty training program.
> ...  Neither will it suffice to prove that an
> injury or accident could have been avoided if an
> officer had had better or more training ... .
> Moreover, for liability to attach ... the
> identified deficiency in a city's training program
> must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff alleges nothing more than a vague and generalized allegation that corrections officers have assaulted prisoners in the past, coupled with allegations that a particular group of corrections officers caused him injury, plainly insufficient allegations upon which to base liability for failure to train or supervise.  Accordingly, Plaintiff's failure to train claim must be dismissed for failure to state a claim.

24

F.    Request for Appointment of Counsel

Plaintiff requests that this Court appoint counsel to represent him in this matter.

Indigent persons raising civil rights claims have no absolute constitutional right to counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).] This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.
>
> Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time. As a preliminary

matter, Plaintiff has presented colorable claims of
constitutional violations sufficient to avoid dismissal at this
preliminary stage.  It is clear from his Complaint, however, that
Plaintiff is well able to set forth the facts and legal theories
of his claims.

    In addition, apart from asserting his indigency, Plaintiff
has made no effort to set forth facts bringing his request within
the parameters set forth in <u>Parham</u>.  It does not appear that any
expert witnesses will be necessary, nor do the legal issues
appear complex.  It is too soon to determine what issues will
arise with respect to fact investigation or credibility issues.
Therefore, this Court will deny the request for appointment of
counsel, without prejudice to Plaintiff or this Court revisiting
this issue at a later date should circumstances warrant.

V.   <u>CONCLUSION</u>

    For the reasons set forth above, certain harassment,
excessive force, and medical-care claims will be permitted to
proceed, as set forth above and in the accompanying Order.  All
other claims will be dismissed with prejudice, pursuant to 28
U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C.
§ 1997e, for failure to state a claim.  However, because it is
conceivable that Plaintiff may be able to supplement his pleading
with facts sufficient to overcome some of the deficiencies

discussed herein, the Court will grant Plaintiff leave to file an amended complaint.[2]

An appropriate order follows.


                                     s/Renée Marie Bumb
                                     Renée Marie Bumb
                                     United States District Judge

Dated: December 12, 2011

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.